## INDIANAPOLIS FOUNDRY COMPANY *v.* BRADLEY.

[No. 6,800.     Filed October 26, 1909.     Rehearing denied March 11, 1910.]

1. MASTER AND SERVANT.—*Factory Act.—Emery-Wheels.—Dust.— Burden of Proof.*—In an action by a servant against his master for the injury of an eye by dust from an emery-wheel, the burden is upon the plaintiff to prove that he was a servant, that he was operating an emery-wheel not properly provided with an exhaust-fan, that it was practicable to provide such exhaust-fan, and that the injury occurred in the manner alleged. p. 532.

2. WORDS AND PHRASES.—*"Dust."*—"Dust" ordinarily imports fine, dry particles of earth or other matter capable of being carried by the wind. p. 533.

3. MASTER AND SERVANT.—*Factory Act.—Emery-Wheels.—"Dust."*— The word "dust," as used in §8029 Burns 1908, Acts 1899, p. 231, §9, requiring factory owners to provide proper exhaust-fans to carry away the "dust" created, includes particles of emery and iron, where iron is being ground on an emery wheel. pp. 533, 534.

4. MASTER AND SERVANT.—*Factory Act.—Emery-Wheels.—Dust.— Instructions.—Question for Jury.*—An instruction that the statute (§8029 Burns 1908, Acts 1899, p. 231, §9) requires that exhaust-fans for emery-wheels shall be of sufficient power to remove all dust, and that the jury must decide whether the alleged particles causing the injury complained of were "dust" within the meaning of the statute, is correct. p. 534.

5. MASTER AND SERVANT.—*Factory Act.—Emery-Wheels.—Dust.— Instructions.—Presumptions.—Verdict.—Jury.*—A general verdict for plaintiff in an action for injury to an eye caused by dust from an emery-wheel, is a finding that plaintiff's eye was injured by dust, and, in the absence of an instruction technically defining "dust," the presumption is that the jury understood the word in its ordinary sense. p. 534.

From Superior Court of Marion County (70,137) ; *James M. Leathers,* Judge.

Action by Andrew J. Bradley against the Indianapolis Foundry Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Robert W. McBride,* for appellant.

*Joseph B. Kealing, Martin M. Hugg* and *Henry N. Spaan,* for appellee.

COMSTOCK, J.—Action by appellee to recover damages for personal injuries alleged to have been sustained by him because of the failure of appellant to equip a certain emery-wheel with an exhaust-fan. Issues were formed on the two paragraphs of complaint by a general denial. A trial by jury was had and a verdict for $900 returned in favor of appellee. Appellant's motion for a new trial was overruled and judgment rendered on the verdict.

The only error assigned, and upon which appellant relies for a reversal, is that the court erred in overruling its motion for a new trial.

In so far as this appeal is concerned, there is no very material difference in the two paragraphs of complaint. It is sufficient to say that both of them, in substance, allege that appellant is a corporation engaged in manufacturing iron castings at Indianapolis, Indiana; that in said manufacture it operates emery-wheels at a high rate of speed, on which castings are ground; that, when castings are ground on said wheels, dust, composed of grindings of iron and emery, are thrown and blown from them; that appellee was employed by the appellant to grind castings on said emery-wheels; that appellant had carelessly, negligently and wrongfully failed to equip, or in any manner provide, said emery-wheels with exhaust-fans with sufficient power to carry off said dust from said wheels; that appellee, while grinding castings on one of said emery-wheels, was injured by dust thrown and blown from said wheel into his eye; that appellee's injuries were caused solely by the carelessness, negligence and wrongfulness of appellant in not providing said emery-wheel with an exhaust-fan, and would not have occurred otherwise..

Appellant asks for a reversal upon the following grounds:

(1) That the verdict is not sustained by sufficient evidence; (2) that the verdict is contrary to law; (3) that the court erred in refusing to instruct the jury as asked.

The first two of these present substantially the same question, viz.: A material averment of each paragraph of the complaint was that defendant had one of his eyes injured by dust getting into it while he was engaged in operating an emery-wheel for appellant, it being alleged that appellant was negligent in failing to obey a statutory requirement and equip the emery-wheel with an exhaust-fan for the removal of the dust. It is the contention of appellant that there was no evidence whatever to show that appellee's eye was injured by dust, or that any dust ever at any time got into or affected his eye, and, upon this absence of proof, appellant insists that the verdict was not sustained by sufficient evidence and was contrary to law.

The action is predicated upon that part of §8029 Burns 1908, Acts 1899, p. 231, §9, which reads as follows: "Exhaust-fans of sufficient power shall be provided for

1.   the purpose of carrying off dust from emery-wheels and grindstones and dust-creating machinery from establishments where used." To warrant a recovery, the burden was on plaintiff to show that he was an employe of defendant; that as such employe he was operating an emery-wheel for his employer; that said emery-wheel was not equipped with an exhaust-fan; that it was practicable to provide said emery-wheel with an exhaust-fan; that plaintiff was injured by dust thrown from said wheel; that his injury was caused in the manner alleged. The only one of these material facts, which we think can be questioned upon the evidence, is, whether the object which struck and injured the eye of appellee was dust, within the meaning of the statute.

The word "dust" has been defined as "fine, dry particles of earth or other matter so comminuted that they may be

raised and wafted by the wind; that which is crumbled to minute portions; fine powder, as clouds of dust; bone dust." Webster's International Dict. "Earthy or rocky matter pulverized so fine as to be borne away easily by the wind; any substance reduced to powder; as, diamond-dust." Standard Dict. "Earth or other matter in fine dry particles, so attenuated that they can be raised and carried by the winds. Finely powdered or pulverized matter." Century Dict.

We believe that the popular definition, the general sense in which the word "dust" is used, is, fine, dry particles of matter, that may be raised and carried by the wind. There is no rule to determine the size of the particle, nor the matter of which it is composed.

One purpose of the statute is to reduce the hazards incident to the operation of emery-wheels. It requires that exhaust-fans of sufficient power shall be provided for the purpose of carrying off dust from "emery-wheels and grindstones and dust-creating machines." Appellee testified that the dust thrown off the wheel in question was "emery and iron." We think the legislature failed in its purpose if the statute did not apply to the particles of created matter thrown from the wheels while in operation, as well as any dust likely to be present in rooms in which dust-creating machines are operated.

The instructions refused are as follows: "(4) The law which provides for the use of exhaust-fans in connection with emery-wheels requires that they should be of sufficient power to remove all dust. The court cannot tell you as a matter of law when a particle of matter is or is not to be considered as dust, within the meaning of this statute. Such questions are questions of fact, and must be determined by you from the evidence. (5) The law which requires the use of exhaust-fans in connection with emery-wheels requires that they shall be of sufficient power to remove all dust. The

court instructs you that the term 'dust,' as thus used, is to be construed in accordance with the ordinary and generally accepted meaning of that term.   (6)   The court further instructs you that the term 'dust,' as used in said statute, should not be construed as meaning and including sparks and glowing particles of emery and iron thrown off from emery-wheels when in use, unless such meaning falls within the ordinary and generally accepted definition of the term dust.''

The court gave, in substance, the first one of these, but refused to give the other two, and gave no instructions equivalent to them.   It is conceded by the learned counsel for appellant that the court could not say, as a matter of law (see *Muncie Pulp Co.* v. *Hacker* [1906], 37 Ind. App. 194), that a piece of emery is not dust, but it is insisted that it could properly give to the jury a rule for determining from the evidence whether the offending substance that entered appellee's eye was dust within the meaning of the statute.   The fifth instruction refused would have told the jury that the term ''dust,'' as used in the statute, is to be construed in accordance with the ordinary and generally accepted meaning of that term.

Said sixth instruction would have excluded sparks and glowing particles of emery and iron, unless they were included within the ordinary and generally accepted definition of the term dust.   If it would have been improper to instruct that emery was not dust, it would be equally improper to intimate or suggest, which the sixth instruction does, that particles of emery and iron were not dust.

By its verdict the jury found that the particle which injured plaintiff's eye was dust, and plaintiff's testimony so denominated it.   In the absence of any instruction by the court defining ''dust,'' that is, in the absence of any technical definition, it will be presumed that the jury understood the word in its usual and ordinarily accepted meaning.

Counsel have cited authorities upon the rules for the construction of statutes.   About them there is no controversy. Applying them to the facts before us, appellee's case is within the statute.

'   Judgment affirmed.